AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH SNAPCHAT USER NAME:<br>"packmahomes369" THAT IS STORED AT PREMISES CONTROLLED BY<br>SNAP INC. | )<br>)<br>)<br>)<br>)<br>) |

Case No.  21-M-6123-01-KGG

FILED UNDER SEAL

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

INFORMATION ASSOCIATED WITH SNAPCHAT USER NAME:  "packmahomes369" THAT IS STORED AT PREMISES CONTROLLED BY SNAP INC.

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | possession with intent to distribute, or distribution of, controlled substances |
| 21 U.S.C. § 843 | unlawful use of a communication device in connection with drug trafficking |
| 21 U.S.C. § 846 | conspiracy to possess and/or distribute controlled substances |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Steve A. Greco, TFO, DEA
*Printed name and title*

Attested to by the Affiant, in accordance with the requirements of Fed.R.Crim.P. 41(d)(3), by telephone or other reliable electronic means, to wit:  by telephone on July 16, 2021.

Date:  **Jul 16, 2021**

*Judge's signature*

City and state:  Wichita, KS

U.S. Magistrate Judge, Kenneth G. Gale
*Printed name and title*

## ATTACHMENT A

Information to be disclosed by Snapchat:

Any and all records related to the Snapchat username: **packmahomes369** for the dates of **March 1, 2021 through July 13, 2021**, including but not limited, to the following:

A.   All contact and personal identifying information, including full name, user identification number, birth date, gender, contact email address, Snapchat passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

B.   All associated Snapchat accounts and users which have been identified by way of mechanical or persistent cookie or other means of account/user association;

C.   All identified devices utilized to login to, or otherwise interact the account, to include specific device identifiers such as make, model, and serial number;

D.   All activity logs for the account and all other documents showing the user's posts and other Snapchat activities;

E.   All photos, videos, and audio uploaded by that user and all photos and videos uploaded by any user that have that user tagged in them including story content, chat content, and memories

F.   All metadata, to include Exchangeable Image File Format (EXIF) data, retained by Snapchat for any images, videos, audio, or other files located within the account;

G.   Friends list;

H.   All other records of communications and messages made or received by the user, including all private messages, snap history, chat history, video calling history, and pending "Friend" requests;

I.   All "check-ins" and other historical location information associated with the user of the device utilized to access the account to include the last known device location (latitude and longitude with any known degree of accuracy expressed in meters);

J.   All IP logs, including all records of the IP addresses that logged into the account;

K.   All past and present lists of friends created by the account;

L.   All records of Snapchat searches performed by the account;

M.   The length of service (including start date) and means and source of any payments associated with the service (including an credit card numbers, bank account numbers, or PayPal accounts);

N.   All associated advertising IDs;

O.   All privacy settings and other account settings, including privacy settings for individual Snapchat users have been blocked by the account; and,

P.   All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services, complaints or flags for violations of Snapchat terms and content, and records of actions taken.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT USER NAME "packmahomes369" THAT ARE STORED AT PREMISES CONTROLLED BY SNAP INC. | Case No. 21-M-6123-01-KGG<br><br>Filed Under Seal |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I, Steve A. Greco, being duly sworn, herby depose and state as follows.

### INTRODUCTION AND AGENT BACKGROUND

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code.

2.      I am a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since November 2020. I am currently assigned to the DEA Garden City, Kansas Post of Duty (GCPOD). I have been employed by the Garden City Police Department since May 2017. I attended the Kansas Law Enforcement Training Center Basic Training in May 2017 until September 2017. I have since received training in complex conspiracy investigations, telecommunications exploitation and asset forfeiture.

3.      I have participated as a law enforcement officer in investigations of unlawful narcotics distribution, physical and electronic surveillances, undercover transactions, the execution of search and arrest warrants, debriefings of informants, and review of recorded conversations and drug records. Through my training, education and experience, I have become familiar with the

manner in which illegal drugs are transported, stored and distributed, and the methods of payments for such drugs. I am also familiar with some of the methods by which narcotics traffickers communicate and code words commonly used by narcotics traffickers.

4.     I am familiar with the facts and circumstances of the investigation set forth below through my personal participation; from discussions with other federal agents and local law enforcement officers; and from my review of records and reports relating to the investigation. Based upon the facts set forth in this Affidavit, there is probable cause to believe violations of 21 U.S.C. § 841 (possession with intent to distribute, or distribution of, controlled substances), 21 U.S.C. § 843 (unlawful use of a communication device in connection with drug trafficking) and 21 U.S.C. § 846 (conspiracy to possess and/or distribute controlled substances) have been committed, are being committed, and/or will be committed by Tyler James BASE (Snapchat user name **packmahomes369**) within the District of Kansas. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## INFORMATION TO BE DISCLOSED BY SNAPCHAT

5.     This affidavit is in support of an Application for a Search Warrant issued to:

**Custodian of Records**
**Snap Inc.**
**2772 Donald Douglas Loop**
**North Santa Monica, CA 90405**

and to seize, secure, tabulate and make return thereof according to law, the following property or things which have been used in the commission of a crime, or which are contraband, or which is property that constitutes, or may be considered evidence, fruits or instrumentalities of a crime, that

2

is: Any and all records related to the Snapchat username: **packmahomes369** for the dates of **March 1, 2021 through July 13, 2021**, including but not limited, to the following:

      A.      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact email address, Snapchat passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

      B.      All associated Snapchat accounts and users which have been identified by way of mechanical or persistent cookie or other means of account/user association;

      C.      All identified devices utilized to login to, or otherwise interact the account, to include specific device identifiers such as make, model, and serial number;

      D.      All activity logs for the account and all other documents showing the user's posts and other Snapchat activities;

      E.      All photos, videos, and audio uploaded by that user and all photos and videos uploaded by any user that have that user tagged in them including story content, chat content, and memories

      F.      All metadata, to include Exchangeable Image File Format (EXIF) data, retained by Snapchat for any images, videos, audio, or other files located within the account;

      G.      Friends list;

3

H.    All other records of communications and messages made or received by the user, including all private messages, snap history, chat history, video calling history, and pending "Friend" requests;

I.    All "check-ins" and other historical location information associated with the user of the device utilized to access the account to include the last known device location (latitude and longitude with any known degree of accuracy expressed in meters);

J.    All IP logs, including all records of the IP addresses that logged into the account;

K.    All past and present lists of friends created by the account;

L.    All records of Snapchat searches performed by the account;

M.    The length of service (including start date) and means and source of any payments associated with the service (including an credit card numbers, bank account numbers, or PayPal accounts);

N.    All associated advertising IDs;

O.    All privacy settings and other account settings, including privacy settings for individual Snapchat users have been blocked by the account; and,

P.    All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services, complaints or flags for violations of Snapchat terms and content, and records of actions taken.

All pertaining to violations of 21 U.S.C. § 841 (possession with intent to distribute, or distribution of, controlled substances), 21 U.S.C. § 843 (unlawful use of a communication device in connection

4

with drug trafficking) and 21 U.S.C. § 846 (conspiracy to possess and/or distribute controlled substances)

## PROBABLE CAUSE

6.    In March 2021, GCPOD began an investigation into Ismael CASTRO, a Garden City, Kansas, area poly drug distributor. GCPOD established a Snapchat account and sent a friend request to CASTRO, which CASTRO accepted. GCPOD never contacted or communicated with CASTRO, but did view stories CASTRO posted that were either visible to the public, or to CASTRO's friends.

7.    Between March 24, 2021 and April 7, 2021, GCPOD observed numerous pictures and videos CASTRO posted on Snapchat related to CASTRO's illicit narcotic distribution.

8.    On April 7, 2021, GCPOD established probable cause CASTRO was trafficking narcotics back to the Garden City, Kansas area. GCPOD requested the Garden City Police Department conduct a traffic stop on the vehicle CASTRO was driving. Pursuant to a probable cause search, the following narcotics were located:

   A.    444.81 grams, tested by KBI Lab, marijuana detected

   B.    0.77 grams, tested by KBI Lab, methamphetamine detected

   C.    24 white round pills with imprint "RP / 10 325," tested by KBI Lab, oxycodone detected

   D.    5 pills blue round with imprint "M/30," tested by KBI Lab, fentanyl detected

   E.    29 white rectangular pills with imprint "GG249", tested by KBI Lab, flualprazolam detected

F.   90 white rectangular pills inside a bottle labeled "Framapram Alprazolam 2.0 mg," not tested by KBI Lab yet, but a second bottle was located in a search of CASTRO's residence that was sent to KBI Lab and KBI Lab detected alprazolam

G.   100 blue rectangular pills with imprint "B707," not tested by KBI Lab yet. TFO Greco used the website, "www.Drugs.Com Pill Identification Wizard" and the pills were identified as "alprazolam 2 mg."

9.   The marijuana was packaged in two separate vacuum sealed bags, the fentanyl pills were located in a small zip lock bag, and the blue rectangle pills were located inside a United States Postal Service (USPS) box that was inside a separate "Cookies" brand bag. The "Cookies" brand bag is advertised as "smell proof" by the company.

10.   On April 9, 2021, in Finney County District Court (25th Judicial District), the Honorable District Judge Christopher Sanders, granted a State of Kansas Search Warrant (21MR83) for CASTRO's Samsung Galaxy S20 Plus with IMEI 3554644113307655. The Samsung Galaxy was seized from CASTRO at the time CASTRO was arrested and taken into custody on April 8, 2021.

11.   On April 9, 2021, at approximately 4:00 p.m., Kansas Counterdrug Analyst Hector Medina began to extract the data from the Samsung Galaxy using Cellbrite.

12.   During a review of CASTRO's cell phone by GCPOD, there were 5 videos located showing the face of a black male with black hair similar to an afro, and a black beard. TFO Steve Greco compared a Kansas Driver's License (K02918559) photo of Tyler James BASE to the male in the video and confirmed it was the same person. The address on the Kansas DL is 223 E. 6th Street, Ellsworth, KS 67439. One video was located that showed the front door of a residence with

6

"223" visible. Kansas Bureau of Investigation (KBI) Special Agent (SA) Tyler Goldsby confirmed the front door of the video matched the actual residence.

13.     TFO Greco located device location data sourced from Google Maps that showed CASTRO was at GPS point 38.731899 (latitude), -98.224352 (longitude) on April 7, 2021 at approximately 5:55 P.M. TFO Greco used Google Maps to convert the latitude and longitude and learned the location was in the area of 218 E. 6th Street, Ellsworth, Kansas. TFO Greco knows latitude and longitude points are not always exact.

14.     The first video shows BASE saying, "I know exactly where you're at, you're all good bro, yes it's in the box, I got these blue bars for you extra too, I got a 100."

15.     The second video shows BASE saying, "alright so, I'm about to make you pay extra if you keep lying bro, you're 45 minutes away, you're not about to pull up, you're in Great Bend."

16.     The third video shows BASE saying, "that way if you get stopped they don't go opening it up. Dadada, dotdadee, when you pull up we'll put it."

17.     The fourth video shows the front door of a residence with the number, "223" visible.

18.     The fifth video shows BASE saying, "of them. You're welcome to purchase them if you want, and I got your P, I've been holding for you all day in the box." TFO Greco knows "P" is street terminology for a pound and a pound is typically associated with marijuana distribution.

19.     The sixth video shows BASE saying, "name on it and shit. But yeah, ill see you in 45 mins bro."

20.     On June 9, 2021, the Honorable United States Magistrate Judge Gwynne E. Birzer, for the District of Kansas (Wichita), authorized a search warrant for CASTRO's Snapchat account "stoneage32."

7

21.     On June 29, 2021, TFO Greco received and began reviewing the data returned from

Snapchat. TFO Greco identified BASE's Snapchat as "packmahomes369." TFO Greco located the

following videos and pictures relevant to BASE:

        A.     On April 7, 2021, at approximately 11:32 P.M. Coordinated Universal Time

                (UTC) (approximately 6:32 P.M. Central Daylight Time), CASTRO sent

                BASE a screenshot of a Google Maps GPS image showing CASTRO was

                17 minutes away from the city of Ellsworth, KS, with a GPS line leading to

                the area of 223 E. 6th Street, Ellsworth, KS.

        B.     On April 8, 2021, at approximately 4:18 A.M. UTC (April 7, 2021

                approximately 11:18 P.M. CDT), an audio message was sent from BASE to

                CASTRO. BASE said, "hell yeah brother, keep your head up g, stay safe

                brother, get home, get that shit safe."

        C.     On April 8, 2021, at approximately 4:31 A.M. UTC (April 7, 2021

                approximately 11:31 P.M. CDT), an audio message was sent from BASE to

                CASTRO. BASE said, "their all there bro, their all in the box."

22.     TFO Greco located the following "chats" relevant to BASE on Snapchat:

        A.     On April 7, 2021 at approximately 11:25 A.M. UTC (approximately 6:25

                A.M. CDT), BASE sent a text message to CASTRO saying, "Well I could

                meet u part way mayb." Castro replied, "Bet lemme see bud a lil more?"

                BASE replied with three messages that were not viewable.

        B.     At approximately 11:26 A.M. UTC (approximately 6:26 A.M. CDT),

                CASTRO sent a text message to BASE saying, "It's 22 for the bud g," and

"So I'll be left with 8bills?" BASE replied with a message that was not viewable.

C.   At approximately 11:28 A.M., UTC (approximately 6:28 A.M. CDT), CASTRO sent a text message to BASE saying, "If I gave you that how many oxys would I get." TFO Greco knows "oxys" are a street term for "oxycodone."

D.   Between approximately 3:04 P.M., UTC (approximately 10:04 A.M. CDT) and approximately 9:19 P.M. UTC (approximately 3:19 P.M. CDT), BASE sent CASTRO three messages that were not viewable.

E.   At approximately 9:45 P.M., UTC (approximately 3:45 P.M. CDT), BASE sent CASTRO a text message saying, "224 e. 6th st."

23.   Based on the totality of circumstances, GCPOD reasonably believed BASE was CASTRO's source of supply that provided narcotics to CASTRO prior to CASTRO being arrested by GCPD.

24.   During further investigation, TFO Greco reasonably suspected BASE was receiving narcotics in the mail due to the marijuana, fentanyl pills, and suspected alprazolam (blue rectangle pills) being packaged inside of a USPS box. TFO Greco knows users and distributors commonly ship and receive packages containing narcotics to minimize direct involvement and interactions with customers via hand to hand transactions in an attempt to avoid contact with law enforcement.

25.   In May 2021, TFO Greco requested United States Postal Inspection Service (USPIS) Inspector Joshua Highfill to place a mail watch on BASE's residence, 223 E. 6th Street, Ellsworth, Kansas.

26.     On July 7, 2021, USPIS Inspector Highfill received a notification that BASE was scheduled to receive a parcel with the tracking number 9505516328361187525086. The parcel was addressed to "Tyler B 223 East 6th Street, Ellsworth, Kansas 67439" with a return address of "230 Highland Court, La Habra, California 90631." The parcel was mailed on July 6, 2021 from the Post Office in La Habra, California 90631. The weight of the parcel is approximately 2 pounds 5.5 ounces. (Subject Parcel)

27.     USPIS Inspector Highfill noticed common characteristics used by individuals who traffic in illegal controlled substances via the United States Mail because:

A.     The Subject Parcel was mailed from a known illegal drug source distribution area (La Habra, California).

B.     The Subject Parcel is similar in size and weight of previously seized parcels containing illegal narcotics.

C.     The recipient doesn't need to sign for the Subject Parcel when delivered.

D.     The label is handwritten without a name for the return address.

28.     On July 12, 2021, the Honorable United States Magistrate Judge Kenneth G. Gale, for the District of Kansas (Wichita), authorized a search warrant for the Subject Parcel.

29.     USPIS Inspector Highfill opened the parcel and located one heat seal clear packaging material containing eight glass containers with a metal lid containing a wax substance totaling approximately 726 grams. USPIS Inspector Highfill weighed one container and the total weight was approximately 90 grams. USPIS Inspector Highfill conducted a field test of the substance and the result was presumptive positive for marijuana.

30.     On July 8, 2021, TFO Greco became "friends" with BASE on Snapchat by using a confidential Snapchat account. TFO Greco observed BASE post a "story" that was a video of a

10

green leafy substance that appeared to be several ounces, consistent with marijuana, inside a large clear plastic bag, with the comment "Blue Dream." TFO Greco knows marijuana distributors typically label different types and strands of marijuana.

31.     On July 11, 2021, TFO Greco observed BASE post a picture on Snapchat of approximately 15 white round pills with the imprint "10 325" visible with the caption "Perks 10 mg script." TFO Greco used the website, "www.Drugs.Com Pill Identification Wizard" and the pills were identified as "acetaminophen 325mg and oxycodone 10mg."

32.     TFO Greco also observed a video of a bottle labeled "Framapram, alprazolam 2 mg tablets," with the caption "(Mexican flag emoji) script bars." TFO Greco seized a similar bottle from CASTRO and the count labeled on the bottle is 90.

33.     On July 12, 2021, the Honorable Magistrate Judge Kenneth G. Gale, for the United States District Court, District of Kansas, Wichita Division, authorized a search warrant for BASE's residence, 223 E. 6th Street, Ellsworth, KS 67439.

34.     On July 13, 2021, TFO Greco observed BASE post a video on Snapchat of approximately one ounce of a green leafy substance with the caption "more on deck" and image of "simply irresistible." TFO Greco knows "on deck" is a term used by narcotics distributors to indicate the distributor has more of the drug shown.

35.     On July 13, 2021, USPIS attempted a delivery of the previously mentioned parcel, but there was no answer at the residence and the parcel was left at the front door. A short time later, DEA and KBI served the premise search warrant and located approximately 6 oxycodone pills, approximately 39 alprazolam pills, and approximately 108.8 grams of marijuana inside the residence. Agents also located multiple items of indicia of occupancy in multiple rooms inside the

11

dwelling. BASE was located inside the residence and taken into custody by DEA agents and transported to the Ellsworth City Hall building by Ellsworth Police Department.

36.     On July 13, 2021, TFO Greco met with BASE at Ellsworth City Hall and conducted a recorded interview with BASE. TFO Greco obtained a verbal and written waiver of BASE's Miranda Rights.

37.     TFO Greco showed BASE an iPhone 8+ and an iPhone 8.  BASE confirmed both iPhones belong to BASE. BASE claimed to be currently using the iPhone 8 due to the iPhone 8+ having a cracked screen. BASE admitted to receiving packages of marijuana and alprazolam in the mail via USPS. BASE admitted to using the devices to arrange the transaction via the smart phone application "Snapchat." BASE claimed to use "bitcoin" by ways of various smart phone applications such as "Cashapp" to trade "cryptocurrency" to purchase drugs on Snapchat.

38.     Your Affiant believes the information obtained from this search warrant may provide additional information related to BASE's illicit narcotic distribution within the District of Kansas. Your Affiant knows Snapchat is a preferred form of communication for persons involved in narcotic transactions due to communication being hard to track by law enforcement.

## SNAPCHAT INFORMATION

39.     Snapchat owns and operates a free-access social networking website of the same name that can be accessed at http://snapchat.com or via the Snapchat application. Snapchat allows its users to establish accounts with Snapchat, and users can then use their accounts to share photographs, videos, and messages with other Snapchat users, and sometimes with the general public.

12

40.     Snapchat asks users to provide basic contact identifying information to Snapchat, either during the registration process or thereafter. This information may include contact e-mail addresses, physical address telephone numbers and vanity screen name.

41.     Snapchat users can create profiles that include photographs, lists of personal interests, and other information. Snapchat users can also share their whereabouts and actions in photos and videos.

42.     Snapchat allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Snapchat users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag. For Snapchat's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted or expired, as well as all photos and videos uploaded by any user that have that user tagged in them.

43.     Snapchat utilize "Snaps." "Snaps" are when a user takes a photo or video using their camera phone in real-time and then selects which of their friends to send the message to. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to "Memories," which is Snapchat's cloud-storage service.

44.     Snapchat utilizes "Stories," which a user can add photo or video "Snaps" to their "Story." Depending on the user's privacy setting, the photos and videos added to a "Story" can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. "Stories" can be

13

saved in "Memories." "Snaps," "Stories," and other photos and videos saved in "Memories" until deleted by the user.

45.     Snapchat utilizes "Memories," which is Snapchat's cloud-storage service. Users can save their sent or unsent "Snaps," posted "Stories," and photos and videos from their phone's photo gallery in "Memories." A user can also edit and send "Snaps" and create "Stories" from these "Memories." A user can also edit and send "Snaps" and create "Stories" from these "Memories." "Snaps," "Stories," and other photos and videos saved in "Memories" are backed up by Snapchat and may remain in "Memories" until deleted by the user.

46.     Snapchat utilizes "Chat," which a user can also type messages, send photos, video notes and video with audio notes to friends with the Snapchat app using the "Chat" feature. A user sends a "Chat" message to a friend, and once it is viewed by both parties – and both parties swipe away from the "Chat" screen – the message will be cleared. Within the Snapchat app itself, a user can opt to have the message disappear after 24 hours, or save part of the "Chat" by tapping on the message that they want to keep. The user can clear the message by tapping it again.

47.     Snapchat has video and voice calling features, and although Snapchat does not record the calls themselves, it does keep records of the date of each call.

48.     Snapchat has a search function that enables its users to search Snapchat for usernames, or pages, among other things.

49.     Each Snapchat account broadcasts the user's media posts, typically photos or videos, to an audience set by the user. This can be for all Snapchat users to see, friends of the user, or prescribed person(s).

50.     Snapchat also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on

14

Snapchat, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.

51.    Social networking providers like Snapchat typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Snapchat users may communicate directly with Snapchat about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Snapchat typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

52.    As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Snapchat user's IP log, stored electronic communications, and other data retained by Snapchat, can indicate who has used or controlled the Snapchat account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Snapchat account at a relevant time.  Further, Snapchat account activity can show how and when the account was accessed or used.  For example, as described herein, Snapchat logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and

15

date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crime under investigation. Additionally, Snapchat builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Snapchat "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Snapchat account owner. Last, Snapchat account activity may provide relevant insight into the Snapchat account owner's state of mind as it relates to the offense under investigation. For example, information on the Snapchat account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

53.     Therefore, the computers of Snapchat are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

54.     Your Affiant anticipates executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Snapchat to disclose to the Government copies of the records and other information, including the content of communications, particularly described in paragraph 5.

16

**CONCLUSION**

55.    Based on the foregoing, your Affiant request that the Court issue the proposed search warrant.

56.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Snapchat. Because the warrant will be served on Snapchat, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

57.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, "a court of competent jurisdiction" includes any district court of the United States (including a magistrate judge of such a court) . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**REQUEST FOR SEALING AND NONDISCLOSURE**

58.    It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application and affidavit, and the requested search warrant. Your Affiant believes that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the contents of the application, this affidavit, and the requested search warrant may adversely affect the integrity of

17

the investigation. Additionally, it is requested that these documents be disclosed as necessary for any discovery in criminal prosecutions without unsealing.

59.     For the same reasons, your Affiant further request, pursuant to 18 U.S.C. § 2705(b), that the Court prohibit Snapchat from disclosing the existence of this warrant and its service on the account(s) to the subscriber(s) or any other person for one year. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber(s) or user(s) of the account(s) would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, notify confederates, or flee from prosecution.

Steve A. Greco
DEA Task Force Officer

Sworn to and attested by telephone after being submitted to me by reliable electronic means on this 16th day of July, 2021.

HONORABLE KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF KANSAS

18